UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

ALLIED INDUSTRIAL SUPPLY LLC,
a domestic limited liability company,

       Plaintiff,                            Case No. 1:22-cv-00815
                                              Hon. Paul L. Maloney

v.

CHRISTOPHER STONE, an individual,

       Defendant.
_____/

| Andrew A. Cascini (P76640) | Christopher E. LeVasseur (P35981) |
|---|---|
| HENN LESPERANCE PLC | STARK REAGAN, PC |
| *Attorney for Plaintiff* | *Attorney for Defendant* |
| 32 Market Avenue, SW, Suite 400 | 1111 W. Long Lake Road, Suite 202 |
| Grand Rapids, MI 49503 | Troy, MI 48098 |
| (616) 551-1611 | (248) 641-9955 |
| aac@hennlesperance.com | clevasseur@starkreagan.com |

_____/

### DEFENDANT CHRISTOPHER STONE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND JURY DEMAND PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)

Defendant Christopher Stone, through his attorneys Stark Reagan, P.C., moves this Honorable Court to dismiss Plaintiff Allied Industrial Supply LLC's Complaint and Jury Demand pursuant to Federal Rule of Civil Procedure 12(b) ("Motion"). In support of his Motion, Defendant relies upon the arguments,

statutory authority, and applicable case law referenced in its Brief in Support of his Motion, and any and all exhibits attached thereto.

Further, and as required by L.R. 7.1(a), Defendant's counsel contacted Plaintiff's counsel by electronic mail on September 27, 2022, explaining the nature of the Motion and its legal basis and requested a conference with Plaintiff's counsel.  Concurrence was not granted.

WHEREFORE, Defendant Christopher Stone respectfully requests that this Honorable Court grant his motion, dismiss Plaintiff's Complaint and Jury Demand with prejudice, grant Defendant an award of the actual attorney fees for this Motion, and any further relief it deems just and equitable.

                                        STARK REAGAN, PC

                                        /s/ *Christopher E. LeVasseur*
                                        Christopher E. LeVasseur (P35981)
                                        *Attorney for Defendant*
                                        1111 W. Long Lake Road, Suite 202
                                        Troy, MI 48098
                                        (248) 641-9955

Dated: September 27, 2022          clevasseur@starkreagan.com
7942-1

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

ALLIED INDUSTRIAL SUPPLY LLC,
a domestic limited liability company,

       Plaintiff,                                  Case No. 1:22-cv-00815
                                                     Hon. Paul L. Maloney

v.

CHRISTOPHER STONE, an individual,

       Defendant.
_____/

| Andrew A. Cascini (P76640) | Christopher E. LeVasseur (P35981) |
|---|---|
| HENN LESPERANCE PLC | STARK REAGAN, PC |
| *Attorney for Plaintiff* | *Attorney for Defendant* |
| 32 Market Avenue, SW, Suite 400 | 1111 W. Long Lake Road, Suite 202 |
| Grand Rapids, MI 49503 | Troy, MI 48098 |
| (616) 551-1611 | (248) 641-9955 |
| aac@hennlesperance.com | clevasseur@starkreagan.com |

_____/

**DEFENDANT CHRISTOPHER STONE'S BRIEF IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND JURY DEMAND PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)**

**I.    INTRODUCTION**

Defendant Christopher Stone ("Stone"), along with the entity he controlled, entered into an asset purchase agreement ("APA") with Allied Industrial Supply, LLC ("AIS"). The APA included confidentiality provisions and required that

Stone execute a Non-Competition and Confidentiality Agreement ("Non-Compete Agreement"). Stone complied with all the obligations in the APA and Non-Compete Agreement. After the Non-Compete Agreement expired, Stone began competing with AIS. Displeased with new competition, AIS has baselessly alleged that Stone violated the APA and Non-Compete Agreement.

## II.   STATEMENT OF FACTS

Stone founded Lehigh Valley Abrasives, LLC ("Lehigh") in 2004. Lehigh was engaged in the business of wholesaling and distributing industrial supplies, primarily focused on abrasives and power tools, both under its name and the name Industrial Tool Crib. Lehigh developed its business by investing heavily in a website, e-mail marketing, and other electronic methods designed to reach potential customers. Thus, as of 2014, much of its customer list was comprised of clients that found it through those efforts.

In or around 2014, AIS approached Stone about purchasing Lehigh after Stone listed the business on a business marketing website. After negotiating the terms of the transaction, AIS, Stone and Lehigh entered into both the APA and Non-Compete Agreement on October 13, 2014. The APA effected the sale of all of Lehigh's assets to AIS (see **Exhibit "1"**), while the Non-Compete Agreement contained the following restriction:

"Seller agrees that for a period of seven (7) years after the Closing Date neither will directly or indirectly engage or invest in, own, manage, operate, finance, control, or participate in the ownership, management, operation, financing, or control of, be employed by, associated with, or in any manner connected with, lend credit to , or render services or advice to, any business whose products or activities compete in whole or in part with the business of AIS within 40 miles of wherever AIS conducts business, has conducted business in the last 12 months, and of AIS's operations, or attempt to interfere with the business of AIS, either directly or indirectly, in any manner, including, but not limited to: (a) interacting with the AIS's customers in an attempt to take, redirect, re-price, interrupt or discontinue any facet of the business relationship; (b) interacting with AIS's employees or representatives in an attempt to induce them to leave employment with AIS; or (c) interacting with any other person or entity so as to divulge information about AIS's business."

See **Exhibit "2"**.

Stone conveyed all assets set forth in the APA and for more than seven (7) years, AIS did not complain that any asset that was supposed to be transferred was not transferred. Additionally, Stone complied with the Non-Compete Agreement by not engaging in the business of wholesaling or distributing competitive products during the restrictive period.

In March 2018, Stone did, however, establish a non-competing business, US Tool Depot ("US Tool"), which engaged in the business of selling wood and metalworking tools. US Tool did not sell any products that were also sold by Lehigh. Stone's founding and operation of US Tool Depot did not violate the Non-

Compete Agreement. It was not until December 2021, well after the expiration of the seven (7) year restrictive period, that US Tool began selling competing items.

In furtherance of his business plan for US Depot, Stone used his personal Hotmail e-mail address to contact a number of former customers (the "Hotmail Account"). Although AIS knew that Stone used his Hotmail Account in connection with Lehigh's business before AIS closed on the purchase of Lehigh, AIS did not identify the Hotmail Account as an acquired asset, nor did AIS require Stone to delete any e-mails from his Hotmail Account.

In addition, Stone began building his new business in the same way he built Lehigh. He developed a website, engaged in e-mail marketing, and engaged in other electronic methods designed to reach potential customers. To facilitate those efforts, Stone purchased lists of potential customers from commercial data brokers and used other commercial services, such as Google AdWords.

When AIS learned that Stone was competing against it, it took the drastic step of sending a letter to Stone's suppliers that baselessly accused Stone of violating the Non-Compete Agreement and otherwise violating the APA. Those outrageous false accusations were made without foundation and were designed to harm Stone's reputation and business. AIS's allegations to suppliers and threats of

litigation has created and continues to create uncertainty with respect to Stone's rights and responsibilities pursuant to the APA and the Non-Compete Agreement.

Therefore, on June 24, 2022, Stone filed his Complaint for Declaratory Judgment in the Superior Court of New Jersey, Law Division in Hunterdon County ("New Jersey Court") against AIS ("Stone Complaint"), wherein he has sought a declaration that he did not violate either the APA or the Non-Compete Agreement. See **Exhibit "3"**.  None of Stone's conduct has violated either agreement and he continues to suffer the uncertainty of his rights and obligations under the APA and the Non-Compete Agreement in view of AIS's allegations.

On September 2, 2022, AIS filed its "Plaintiff Allied Industrial Supply LLC's Complaint and Jury Demand" ("AIS's Complaint") in this Court, alleging six (6) counts against Stone, including:

1) Violation of the Defend Trade Secrets Act, 18 U.S.C. 1836(B)(1);
2) Violation of the Copyright Act, 17 U.S.C. 101, et seq;
3) Breach of Contract;
4) Misappropriation of Trade Secrets in Violation of MCL 445.1903;
5) Conversion in Violation of MCL 600.2919(A); and
6) Civil Violation of the Computer Fraud and Abuse Act, 18 U.S.C. 1030.

Subsequently, on September 6, 2022, AIS filed its "Answer with Affirmative Defenses and Verified Counterclaim of Allied Industrial Supply, LLC" to the Stone Complaint in the New Jersey Court ("AIS's Verified Counterclaim"). The counterclaim contains the same counts as were asserted in AIS's Complaint filed with this Court, except for Count IV above being under New Jersey law as opposed to Michigan law. See **Exhibit "4"**. Within AIS's Verified Counterclaim, AIS states that the Superior Court of New Jersey Law Division in Hunterdon County is the proper venue and has jurisdiction over AIS's counterclaims:

> "This Court *has jurisdiction over this Counterclaim*, and *venue is proper* in this Court, because Stone commenced the original action against … [AIS] in Hunterdon County, New Jersey. *More specifically*, [AIS]'s *counterclaims are properly brought in this action and in this Court* and pursuant to Rule 4:30A of the New Jersey Rules of Court because *each claim arises from related facts or the same transaction or series of transactions* giving rise to Stone's claims."

See **Exhibit "4"**, p. 6, ¶6.

Thus, AIS filed its Complaint in this Michigan Court, then almost immediately consented to jurisdiction in the New Jersey Court for virtually identical claims. AIS's actions are not permissible under the Federal Rules of Civil Procedure, and thus Stone asks this Court to dismiss AIS's Complaint in this Michigan Court, with prejudice, as the same claims are already being adjudicated in the New Jersey Court.

### III. ARGUMENT

Rule 12(b) of the Federal Rules of Civil Procedure states that "a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19. *A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.*" This Motion "must be heard and decided before trial" as specifically stated in Rule 12(i) of the Federal Rules of Civil Procedure.

Thus, Stone states that venue for this action is inappropriate in this Michigan Court as all claims stated in AIS's Complaint are substantially identical to AIS's Verified Counterclaim filed in the New Jersey Court, where AIS consented to the New Jersey Court's jurisdiction without any objection. AIS is attempting to litigate the same claims in two different courts to "double dip" and "forum shop", to see whether the Michigan Court or the New Jersey Court will give it a better result.

"As between federal district courts, … the general principle is to avoid duplicative litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The AIS Complaint is exactly that – duplicative litigation. Stone relies in this Motion on the "first-to-file" rule, which "provides

that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007). The Stone Complaint was filed on June 24, 2022, in the New Jersey Court, and the AIS Complaint was filed on September 2, 2022, in the Michigan Court. The Stone Complaint was filed first and should be the suit that proceeds to judgment in the New Jersey Court.

In determining whether the first-to-file rule applies, the Court must consider "whether 1) the actions involve nearly identical parties, 2) the actions involve nearly identical issues, and 3) whether this Court should exercise its discretion to dispense with the rule for equitable reasons or because special circumstances warranting an exception are present." *Long v. CVS Caremark Corp.*, No. 5:09CV1392, 2010 WL 271428, at *2 (N.D. Ohio Jan. 15, 2010). "When a federal court is presented with such a duplicative suit, it may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit." *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997).

Stone commenced his suit by filing the Stone Complaint in the New Jersey Court on June 24, 2022, which requires a responsive pleading. See **Exhibit "3"**. AIS was aware of the suit already having been commenced in the New Jersey

Court and its obligation to respond or the repercussions of failing to respond to the Stone Complaint. However, despite this, AIS filed the AIS Complaint in the Michigan Court on September 2, 2022. Four (4) days later, AIS files its Answer and Verified Counterclaim in the New Jersey Court, which Verified Counterclaim is substantially identical to the AIS Complaint filed in the Michigan Court. See **Exhibit "4"**. The AIS Complaint and the AIS Counterclaim involve the same parties (Stone and AIS), contain the same claims by AIS against Stone (six (6) claims, with Count #4 being governed by the respective state law), and there are no equitable reasons or special circumstances warranting an exception.

If this Court was to consider any equitable reasons or special circumstances in granting Stone's Motion, the AIS Complaint would be dismissed with prejudice, and the parties' respective claims would continue to be adjudicated in the New Jersey Court. AIS knowingly filed its Complaint in the Michigan Court after being served with the Stone Complaint. Further, AIS filed its Answer and Verified Counterclaim in the New Jersey Court four (4) days after filing the AIS Complaint in the Michigan Court. By filing claims in two (2) different district courts alleging the same claims against a party, AIS is plainly forum shopping. Therefore, under the first-to file rule, venue is improper in the Michigan Court and all claims by AIS and Stone should be adjudicated in the New Jersey Court.

Counts I, IV, V, and VI of AIS's Complaint are barred by the respective statutes of limitations and laches insofar as they rely on Stone's possession or use of his Hotmail Account because AIS has known that Stone has been in exclusive possession of his Hotmail Account since November 6, 2015.

Count III of AIS's Complaint relies on a liquidated damages provision that is unenforceable because it is unconscionable and a penalty.

Any claims made by AIS in it's Complaint predicated on Stone's access to or use of the information contained in his Hotmail Account is barred by the release entered into by the parties on August 7, 2015, in which AIS "release[d], waive[d], and forever discharge[d] any and all claims, known or unknown against Stone,… from any and all liability for any and all claims, known or unknown, accrued or un-accrued, arising from any event from the beginning of time until the date of th[at] Agreement, with the exception that the Non-Compete attached [t]hereto as Exhibit A shall survive and shall not be effected in anyway by th[at] Agreement," (see **Exhibit "1"**) because on that date, Stone had full, unrestricted access to his Hotmail Account.

### IV.   CONCLUSION/RELIEF REQUESTED

For the myriad of reasons stated herein, Defendant Christopher Stone respectfully requests that this Honorable Court grant his Motion and dismiss

Plaintiff's Complaint and Jury Demand in its entirety, with prejudice, and grant it any further relief it deems just and equitable, including attorney fees and costs.

### Certificate of Compliance with L. Civ. R. 7.2(b)

This Brief in Support of Defendant W.L. Molding of Michigan, LLC's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(c) was produced on a computer, containing the following in compliance with L. Civ. R. 7.2(b):

   Number of Words: 2,134

   Word Processing Software: Microsoft Word 2010

STARK REAGAN, PC

 /s/ *Christopher E. LeVasseur*
Christopher E. LeVasseur (P35981)
*Attorney for Defendant*
1111 W. Long Lake Road, Suite 202
Troy, MI 48098
(248) 641-9955

Dated:  September 27, 2022          clevasseur@starkreagan.com

### CERTIFICATE OF SERVICE

I certify that on September 27, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of the filing to all counsel of record.

       /s/ Megan Kienle
Megan Kienle