UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLIED INSUSTRIAL
SUPPLY LLC,

       Plaintiff,                                  Hon. Paul L. Maloney

v.                                                        Case No. 1:22-cv-815

CHRISTOPHER STONE,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Allied Industrial Supply LLC has sued Defendant Christopher Stone, alleging claims for: (1) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836; (2) violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*; (3) breach of contract; (4) misappropriation of trade secrets under Mich. Comp. Laws § 445.1903; (5) conversion under Mich. Comp. Laws § 600.2919a; and (6) civil violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Allied alleges subject matter jurisdiction based on both federal question jurisdiction and diversity jurisdiction.[1] Presently before me is Stone's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b). (ECF No. 6.)

---

[1] Allied's diversity allegations are deficient. (ECF No. 1 at PageID.2.) While it alleges that it is owned and operated by Stone Fox Ventures, LLC, a single-member Michigan limited liability company, it fails to allege the citizenship of Stone Fox Ventures, LLC's member, which is required to properly allege diversity jurisdiction where a party-limited liability company is owned by another limited liability company. *See V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 356 (6th Cir. 2010). Nonetheless, federal question jurisdiction provides a separate basis for subject matter jurisdiction.

Pursuant to 28 U.S.C. § 636(b)(1)(B), for the reasons set forth below, I recommend that the Court **DENY** the motion to dismiss but **STAY** this action to allow the United States District Court for the District of New Jersey to decide the application of the first-to-file rule.

### I.  Background

**A.  Facts**

Allied is a Michigan limited liability company. Stone is a resident of New Jersey. Prior to October 2014, Stone owned and operated a small industrial supply company called Lehigh Valley Abrasives, LLC. Lehigh's products included abrasives, power tools, stationary metal and wood machinery, tools, and other items, which it sold to contractors, manufacturers, and others. (ECF No. 1 at PageID.4.) Because Lehigh was simply a wholesaler and did not manufacture equipment or tools, its business assets consisted primarily of customer contacts, prior purchase orders, and email addresses and websites that it used to generate online sales through Microsoft and Google online advertising platforms. (*Id.* at PageID.4–5.)

Customers could purchase products from Lehigh directly online, or by submitting formal purchase orders or informal emails to Lehigh's published email accounts. The first address, clslcs2000@hotmail.com (the Hotmail Account), was primarily used to receive purchase orders, requests for quotes and pricing information, and for other inquiries directly from end-user customers. The Hotmail Account was linked to Microsoft Tools and was used for advertising campaigns designed to attract customers to Lehigh's internet sites. The second address, clslcs2000@gmail.com (the Gmail Account) was used to access Google-related tools and features in connection with Lehigh's online advertisements and its search engine optimization. The Gmail Account also served as a repository for a large cache of customer information, including historical customer material selection information, private label configurations for Lehigh-branded products, and customers' preferred product selections. (*Id.* at PageID.5–6.) As of 2014, between 70 and 80

percent of Lehigh's sales were generated from emails sent to and from the Hotmail and Gmail Accounts. (*Id.* at PageID.6.)

On October 13, 2014, Allied and Lehigh entered into an Asset Purchase Agreement (APA), pursuant to which Allied purchased all of Lehigh's tangible and intangible property, including its website and all passwords and information needed to operate the website, and all past purchase orders. (*Id.* at PageID.6–ECF No. 1-2 at PageID.23–24.) Allied alleges that Lehigh's intellectual property, including its website, and intangible property, including the Hotmail Account and the Gmail Account, represented the most valuable part of the purchased assets. (*Id.* at PageID.8–9.) In connection with the asset purchase, Lehigh and Stone signed a Non-Competition and Confidentiality Agreement (NCA), which prohibited them from competing with Allied for a period of seven years from the closing date. (*Id.* at PageID.9; ECF No. 1-1 at PageID.20.)

Following the closing, Stone removed all of his personal content from the Hotmail and Gmail Accounts and turned them over to Allied. Allied then changed the passwords and modified the settings directing potential customers sending emails to either account to a separate Allied email account. (ECF No. 1 at PageID.10.) Allied alleges that after the restricted period expired, it learned that Stone had begun to compete with it while the non-compete provisions were still in force. It alleges that in March 2018, Stone created a limited liability company called US Tool Depot, LLC and registered an internet domain using that name the following month. At some point, Stone also accessed the Hotmail and Gmail Accounts and submitted password resets, which generated emails to Allied notifying it of Stone's activity. (*Id.* at PageID.10–11.) Allied's suspicion that Stone was competing was confirmed on March 29, 2022, when Stone inadvertently sent a customer solicitation regarding his new company, Extreme Performance Abrasives, to either the Hotmail Account or the Gmail Account, which was forwarded to Allied's customer contact email.

(*Id.* at PageID.11.) In addition, one month prior to the end of the non-compete period, Stone registered the internet domain xpabrasives.com and created a website to populate the domain, which sold industrial supplies and other products that competed directly with Allied's products. Allied further alleges that Stone stole proprietary product images and descriptions from its website and directly copied the taxonomical structure of Allie's website. Finally, Allied alleges that, recently, Stone prevented Allied from accessing the Hotmail and Gmail Accounts by changing their passwords. (*Id.* at PageID.12.)

### B. Procedural History

On June 24, 2022, Stone filed a complaint in the Superior Court of New Jersey, Law Division in Hunterdon County (New Jersey Action) requesting a declaratory judgment that he has not violated the APA or the NCA. (ECF No. 6-3.) Stone alleged that once Allied learned he was competing against it, it sent letters to his suppliers accusing him of violating both agreements. He alleged that Allied's allegations and threats of litigation to his suppliers created uncertainty with respect to his rights and obligations under both agreements. (*Id.* at PageID.83–84.)

On September 2, 2022, Allied filed its complaint in this action. On September 6, 2022, Allied filed its answer and affirmative defenses in the New Jersey Action. (ECF No. 6-4.) Allied also filed a verified counterclaim alleging the same claims it alleges in this action, except that the trade secrets and conversion claims are based on New Jersey law, rather than Michigan law. (*Id.* at PageID.100–07.)

Stone filed the instant motion to dismiss on September 27, 2022, and Allied filed its response on October 25, 2022. About two weeks earlier, on October 7, 2022, Allied removed the New Jersey Action to the United States District Court for the District of New Jersey. (ECF No. 9-1 at PageID.182–86.)

II. Discussion

As an initial matter, the motion's asserted grounds for dismissal are not clearly articulated. Stone begins by citing all of the bases for dismissal under Rule 12(b), follows with a brief paragraph mentioning venue, sets forth a more detailed discussion of the first-to-file rule, and concludes by discussing his defenses to the claims.

First, as to venue, Stone's assertion that venue is inappropriate in this district because Allied admitted in its verified counterclaim in the New Jersey Action that venue was proper in that court is simply wrong. This is because under the general venue statute, 28 U.S.C. § 1391, venue may be proper in more than one judicial district. *See Hamm v. Wyndham Resort Dev. Corp.*, No. 3:19-cv-426, 2020 WL 5995050, at *7 (M.D. Tenn. Oct. 9, 2020) (noting that "the rules clearly contemplate that venue may be proper in more than one judicial district" (internal quotation marks omitted); *Means v. United States Conference of Catholic Bishops*, No. 13-CV-14916, 2015 WL 13035285, at *2 (E.D. Mich. Mar. 31, 2015) (citing *Overland v. Taylor*, 79 F. Supp.2d 809, 811 (E.D. Mich. 2000)) (same). Stone offers no other argument as to venue in his opening brief, and I decline to address his venue arguments asserted in his reply because they are waived. *Hoch v. SunTrust Mtg., Inc.*, No. 1:18-CV-767, 2019 WL 1383712, at *2 (W.D. Mich. Jan. 18, 2019) ("SunTrust's argument regarding the exemption in M.C.L.A. § 445.1675(m)—raised for the first time in SunTrust's reply brief—is deemed waived."); *Shannon v. State Farm Ins. Co.*, No. 14-cv-14153, 2016 WL 3031383, at *4 (E.D. Mich. May 27, 2016) ("A reply is not the proper place to raise an argument for the first time; such arguments are waived." (citing, among others, *United States v. Owens*, 458 F. App'x 444, 446 (6th Cir. 2012))).[2]

---

[2] I note that Section 1391 would not completely answer the venue issues in this case. For example, in the NCA, Stone contractually agreed to venue in this district for claims arising under the NCA. (ECF No. 1-1 at PageID.21.) This *permissive* venue provision renders this district a proper venue

Next, Stone's arguments concerning his defenses to the claims (ECF No. 6 at PageID.63), are not proper on a motion to dismiss as they are more appropriate for a motion for summary judgment. Stone fails to explain why or how these arguments are pertinent to his proffered basis for dismissal.

This leaves the actual basis of the motion: the first-to-file rule. (ECF No. 6 at PageID.60–61 ("Stone relies in his Motion on the 'first-to-file' rule . . . .").) This rule embodies the sensible principle that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. McIver*, 9 Wheat. 532, 22 U.S. 532, 535 (1824). The Sixth Circuit has observed that the rule is "a well-established doctrine that encourages comity among federal courts of equal rank. The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001) (quoting *In re Burley*, 738 F.2d 981, 988 (9th Cir. 1984)). Pertinent considerations are: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues. *See Plantronics, Inc. v. Clarity, LLC*, No. 1:02-CV-126, 2002 WL 32059746, at *2 (E.D. Tenn. July 17, 2002). The rule promotes judicial efficiency and should not be disregarded lightly. S*ee Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1192 (C.D. Cal. 2006). On the other hand, it "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). A district court thus has discretion to dispense

---

as to the breach of contract claim in Count III based on alleged violation of the NCA. In contrast, a separate venue statute governs copyright cases. Pursuant to 28 U.S.C. § 1400(a), venue in copyright cases is proper where "the defendant or his agent resides or may be found." Thus, New Jersey would appear to be the only proper venue for the copyright infringement claim set forth in Count II.

with the rule where equity so demands. *See Nartron Corp. v. Quantum Research Group, Ltd.*, 473 F. Supp. 2d 790, 795 (E.D. Mich. 2007). "Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Zide Sport Shop of Ohio, Inc.*, 16 F. App'x at 437.

Allied contends that the first-to-file rule has no application in this case because it applies only to competing actions pending in coordinate federal courts, not where one action is pending in state court. (ECF No. 8 at PageID.153.) This is a correct statement of the law, *see Sault Ste. Marie Tribe of Chippewa Indians v. Hamilton*, No. 2:09-CV-95, 2010 WL 299483, at *5 (W.D. Mich. Jan. 20, 2010) ("The instant case does not concern two cases pending in two different federal district courts. Rather, one case is pending in federal court and the other is pending in Minnesota state court. The first-to-file rule thus has no application."), and it applied at the time Stone filed his motion, but not when Allied filed its response. By then, Allied had removed the New Jersey Action to federal court. When confronted with similar circumstances, courts have consistently held that the date a case was filed in state court, rather than its removal date, is the relevant date for determining the first-filed case. *See, e.g.*, *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1125–26 (10th Cir. 2018) ("We agree that courts should focus on the date that the complaint was filed in state court. To do otherwise would reward gamesmanship."); *Hartford Accident & Indem. Co. v. Margolis*, No. 90-16626, 1992 WL 43484, at *1 (9th Cir. Mar. 5, 1992) (finding the plaintiff's argument that the removal date should apply in considering the first-to-file rule "not compelling" because an action initiated in state court and later removed to federal court remains the same action); *KAL Drilling, Inc. v. Star of Tex. Energy Servs., Inc.*, No. A-07-CA-319, 2007 WL 9701456, at *2 (W.D. Tex. Aug. 24, 2007) (stating that "the relevant date for purposes of the first-to-file rule is the date the case was originally filed in state court, not the date the case

7

was removed to federal court"); *Aluminum Banking Co. v. Callery/Conway/Mars HV, Inc.*, No. 06-12038, 2006 WL 2193007, at *2 (E.D. Mich. Aug. 2, 2006) (observing that every court to consider the issue " has held that the date the case was filed in state court is the relevant date").

All of the requirements for applying the first-to-file rule in favor of the New Jersey Action are present. That action was filed first, the parties are identical, and the claims and issues are essentially the same. Citing *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551–52 (6th Cir. 2007), Allied notes that in applying the first-to-file rule, courts generally defer to later-filed coercive actions over prior-filed declaratory judgment actions. (ECF No. 8 at PageID.154.) While this statement may be generally true, it does not create an unequivocal rule that later-filed coercive actions must be allowed to proceed in all cases. Rather, factors such as "'extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping'" inform a court's discretion. *Id.* (quoting *Zide Sport Shop of Ohio, Inc.*, 16 F. App'x at 437). In any event, I suggest that rather than deciding the issue, the Court defer to the District of New Jersey, as the court having jurisdiction over the first-filed case, to determine whether the rule should be applied or disregarded in favor of this action. *See Ginter v. Whirlpool Corp.*, No. 1:08-CV-750, 2008 WL 11319458, at *2 (W.D. Mich. Oct. 2, 2008) (staying case and deferring to district court presiding over first-filed case to decide the issue (citing *Daimler-Chrysler Corp. v. General Motors Corp.*, 133 F. Supp. 2d 1041, 1042 (N.D. Ohio 2001) (setting forth "a body of case law that directs the court which first obtained jurisdiction to determine whether it should retain the case or let it proceed in the court of second filing")); *Aluminum Banking Co.*, 2006 WL 2193007, at *3 (dismissing action to allow the first-filed court to decide the proper forum for the case (quoting *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 n.9 (S.D.N.Y. 1995) ("Case law indicates that the court in which the first-filed case was brought decides the

8

question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies."))). In fact, by letter dated January 18, 2023, to Judge Zahid N. Quraishi in the New Jersey Action, Allied's counsel has requested a pre-motion conference to file a motion to transfer venue to this district pursuant to 28 U.S.C. § 1404(a). As part of his argument, counsel expressly refers to the first-to file rule. *See Stone v. Allied Indus. Supply, LLC*, No. 3:22-cv-05941 (D.N.J.), Doc. No. 4 at PageID.100–02. Accordingly, it appears that Allied already intends to submit the issue to that court.

### III. Conclusion

For the foregoing reasons, I recommend that the Court **deny** Stone's motion to dismiss (ECF No. 6) and **stay** this action pending a decision from the District of New Jersey on the application of the first-to-file rule.

Dated: January 23, 2023

      /s/ Sally J. Berens  
SALLY J. BERENS  
U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).