UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLIED INDUSTRIAL SUPPLY LLC,

       Plaintiff

v.

                                         Case No. 1:22-cv-815
                                         Hon. Paul L. Maloney

CHRISTOPHER STONE

       Defendant

_____/

**DEFENDANT CHRISTOPHER STONE'S BRIEF IN SUPPORT
OF HIS MOTION FOR SUMMARY JUDGMENT [DOCKET NO. 80]**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION .......................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 4

LEGAL ARGUMENT .................................................................................................... 4

    a.    **The Law of Summary Judgment** .................................................................. 4

    b.    **The Statute of Limitations Bars Counts I, IV, V, and VI** ....................... 6

    c.    **The Plaintiff's Failure to Register its Works Bars Court II** ................. 8

    d.    **The Plaintiff's Failure to Prove a Breach of the Restrictive Covenant Entitles Plaintiff To Summary Judgment on Count III** ............................................. 9

    e.    **The Court Should Enter Summary Judgment on Stone's Affirmative Defense that the Liquidated Damages Provision is an Unenforceable Penalty** .............. 14

    CONCLUSION ....................................................................................................... 15

## TABLE OF AUTHORITIES

### CASES

*Alexander v. CareSource*,
  576 F.3d 551 (6th Cir. 2009) ................................................................. 5

*Amalgamated Indus. Ltd v. Tressa, Inc.*,
  69 F. App'x 255 (6th Cir. 2003) ............................................................ 7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .............................................................................. 4

*Campbell v. Grand Trunk W. R. Co.*,
  238 F.3d 772 (6th Cir. 2001) ................................................................. 6

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .......................................................................... 4, 5

*Courser v. Michigan House of Representatives*,
  404 F. Supp. 3d 1125 (W.D. Mich. 2019), *aff'd*, 831 F. App'x 161 (6th Cir. 2020) ................... 7

*Curran v. Williams*,
  89 N.W.2d 602 (Mich. 1958) ............................................................... 14

*Dietrich v. Bell, Inc.*,
  554 F. App'x 418 (6th Cir. 2014) .......................................................... 9

*Doe v. Henry Ford Health Sys.*,
  308 Mich. App. 592 (Mich. 2014) ........................................................ 9

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  586 U.S. 296 (2019) .............................................................................. 9

*Hartsel v. Keys*,
  87 F.3d 795 (6th Cir. 1996) ................................................................... 5

*Innovation Ventures, Ltd. Liab. Co. v. Liquid Mfg., Ltd. Liab. Co.*,
  885 N.W.2d 861 (Mich. 2016) ............................................................ 10

*Joe Hand Promotions, Inc. v. Griffith*,
  49 F.4th 1018 (6th Cir. 2022) ............................................................... 9

*Lewis v. Philip Morris Inc.*,
  355 F.3d 515 (6th Cir. 2004) ................................................................. 5

*Mich. Elec. Emples. Pension Fund v. Encompass Elec. & Data, Inc.*,
  556 F. Supp. 2d 746 (W.D. Mich. 2008) ............................................... 5

*Moore v. St. Clair Cnty.*,
    328 N.W.2d 47 (Mich. App. 1982) ................................................................. 14

*Scott v. Harris*,
    550 U.S. 372 (2007).......................................................................................... 5

*Sperber v. Nicholson*,
    342 F. App'x 131 (6th Cir. 2009) .................................................................... 5

*Stromback v. New Line Cinema*,
    384 F.3d 283 (6th Cir. 2004)............................................................................ 9

*Tenaris Bay City, Inc. v. United States*,
    698 F. Supp. 3d 1287 (Ct. Int'l Trade 2024) ................................................. 13

*Tillman v. Great Lakes Truck Ctr., Inc.*,
    742 N.W.2d 622 (Mich. 2007) ........................................................................ 7

*UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*,
    579 N.W.2d 411 (Mich. App. 1998) ............................................................. 14

*Woodward v. Cadillac Overall Supply Co.*,
    240 N.W.2d 710 (Mich. 1976) ...................................................................... 10

## STATUTES

18 U.S.C.A. § 1836.............................................................................................. 6, 7

Mich. Comp. Laws § 445.1907............................................................................... 7

Mich. Comp. Laws § 600.5805............................................................................... 7

## RULES

Fed. R. Civ. P. 56(a) ............................................................................................... 4

**NOW COMES** Defendant Christopher Stone by and through his attorneys Stark Reagan, P.C., and for his Brief in Support of his Motion for Summary Judgment states as follows:

## <u>INTRODUCTION</u>

This case is simple. The plaintiff seeks damages from Defendant, Christopher Stone, for a breach of a contract that did not occur. It seeks damages from Stone for purported violations of the Copyright Act for works that are not registered. Finally, it seeks damages for Stone's purported use of information contained in two email accounts, one of which Stone has had access to for nearly ten years and the second of which Stone has not had access to for nearly ten years. So why are we here? The answer is simple: Stone began competing against the Plaintiff after the expiration of his seven-year non-compete agreement and the Plaintiff wants to shut down his lawful competition. The Court should not oblige.

Stone spent his career in the manufacturing industry before founding Lehigh Valley Abrasives ("LVA"). That niche business, which started out of his basement, focused on selling abrasives to metal workers. Stone's philosophy was simple: couple premium abrasive products at value prices with niche technical knowledge on how to best use them. Under Stone's leadership, LVA grew from a basement operation to a 2,500 square foot warehouse using only a lean staff of four, which included his two teenage sons. By the time the Plaintiff's principal, Robert Shindorf, approached Stone, LVA's annual sales exceed three million dollars.

The parties negotiated a transaction whereby the purchase price would be paid by 1) $800,000 down and 2) delivery of a $500,000 promissory note to be paid back at a rate of $8,000 per month, with a balloon payment after thirty-six payments. Mere months after the transaction closed, however, the Plaintiff defaulted on the promissory note. To extract a discounted settlement, the Plaintiff intimated that if Stone did not agree to its heavily discounted offer, it would default on its secured loan, which would end all payments to Stone. Rather than risk his

1

retirement nest egg, Mr. Stone accepted the offer of several hundred thousand dollars less than what he was owed and incurred significant attorney fees in the process.

After spending four years working with nonprofit organizations in various missions, Stone felt the itch to return to business. So, in 2018, Sone consulted a lawyer about business opportunities that would not violate the seven-year non-compete agreement he signed at LVA's sale. The upshot of that meeting was that clause, though poorly worded, essentially, prevented Stone from selling abrasives within a forty-mile radius of the Plaintiff's Grand Rapids, Michigan headquarters. Thus, Stone started US Tool, a New Jersey-based company that sold only woodworking tools.

In late 2021, after the seven year non-compete agreement expired, Stone started a second company called Extreme Performance Abrasives, which competed with LVA. Six months after the non-compete expired, the Plaintiff made a litany of accusations against Stone and transmitted letters to Stone's suppliers to malign Stone's impeccable reputation. That was the first contact Sone had with the Plaintiff since 2015.

Stone's dealings with the Plaintiff have always been undertaken in good faith. Stone's efforts to start a new business was likewise undertaken in good faith with due regard to his obligations under his non-compete agreement. The Plaintiff has done the opposite at every turn, from defaulting on a loan to dragging Stone through this meritless and deleterious lawsuit, its conduct far exceeded mere "sharp elbows" in business to bad faith interference with lawful competition.

The Plaintiff's six-count complaint is clustered around three factual disputes. Counts I, IV, V, and VI allege violations of trade secrets acts, conversion, and a violation of the Computer Fraud and Abuse Act owing to the Plaintiff's access or purported access to the Hotmail Account and Gmail Account, as defined in the Complaint. Count II alleges a violation of the Copyright Act

owing to Plaintiff's purported copying of the Plaintiff's website copy. And Count III alleges a violation of the Non-Compete Agreement that was signed in connection with Stone's sale LVA to the Plaintiff. None of those Counts can survive summary judgment.

Counts I, IV, V, and VI are barred by the applicable statute of limitations. With respect to the Hotmail Account, Stone has had sole control over it since the fall of 2015. The Plaintiff has known that it lost access to the account since February 2016, at the latest. The statutes of limitations for the trade secrets claims and the conversion claim are three years from when the Plaintiff knew or should have known that Stone took control of the Hotmail Account. The statute of limitations for the compute Fraud and Abuse Act is two years from when the Plaintiff knew or should have known of the purported unauthorized access. Thus, the Plaintiff's right to bring suit expired in 2018 or 2019. Thus, the Court should enter summary judgment on those Counts.

Count II alleges a violation of the Copyright Act. But the Copyright Act requires that a plaintiff register the works before it can bring an infringement suit. The Plaintiff admits he did not do so. Thus, the Court should enter summary judgment on County II.

Finally, Count III alleges a breach of the Non-Compete Agreement and seeks liquidated damages in the amount of $250,000. But the Plaintiff has utterly failed to demonstrate that Stone did anything more than register a company and import some goods to be sold *after* the expiration of the Non-Compete Agreement. Thus, the Court should enter summary judgment on Count III because the Plaintiff has not demonstrated a breach of that agreement.

The Plaintiff bears the burden of proof at trial on his claims. Thus, it is sufficient for Stone to simply point to the Plaintiff's inability to establish any single element of its claim. Once Stone does that, the Plaintiff must respond with cogent, admissible, and persuasive evidence showing

that a fact finder could rule in its favor. The record in this case shows that the Plaintiff cannot meet that burden. The Court, therefore, should enter summary judgment in Stone's favor.

## FACTUAL BACKGROUND

Incorporated herein by reference are Stone's statement of material facts.

## LEGAL ARGUMENT

### a.  The Law of Summary Judgment

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A movant must support his motion by citing to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *Id.* A reviewing court should enter summary judgment if the non-moving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The mere existence of some factual dispute is insufficient to preclude summary judgment. Rather, "the dispute must be genuine, meaning that a reasonable jury could return a verdict for the nonmoving party, and the disputed fact must be material, meaning that it might affect the outcome of the case under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. As such, courts must take care to distinguish

between genuine disputes and those that rest on speculation, conjecture, or unsupported assertions.

The summary judgment standard is particularly favorable to a defendant-movant who does not bear the burden of proof at trial. That situation is fundamentally different than when a party who has the burden of proof seeks summary judgment. In the former situation, the defendant-movant need not affirmatively disprove the plaintiff's case. *Celotex*, 477 U.S. at 323. Rather, "[t]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 317. In fact, a defendant-movant "'need only . . . point . . . to . . . an absence of evidence to support the nonmoving party's case.'" *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (quoting *Celotex*, 477 U.S. at 325). In other words, a showing that the non-movant cannot sustain its burden at trial justifies entry of summary judgment. *Mich. Elec. Emples. Pension Fund v. Encompass Elec. & Data, Inc.*, 556 F. Supp. 2d 746, 757 (W.D. Mich. 2008) (citing *Morris v. Oldham Cty. Fiscal Ct.,* 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo v. ICI Paints,* 398 F.3d 751, 761 (6th Cir. 2005).

Finally, of particular relevance to this action, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). But even if the evidence is not directly contradicted, a plaintiff-non-movant cannot survive a motion for summary judgment by relying on speculative, conclusory, or insufficiently probative evidence. *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004). Nor will the non-movant's "own self-serving innuendo and speculation…" save it from summary judgment. *Sperber v. Nicholson*, 342 F. App'x 131, 132

(6th Cir. 2009). Instead, the evidence brought forth by the plaintiff-non-movant must be admissible. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citing *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007). A faithful application of the foregoing standard should result in summary judgment on all the Plaintiff's claims.

b. **The Statute of Limitations Bars Counts I, IV, V, and VI**

Counts I, IV, V, and VI allege a violation of the Defend Trade Secrets Act, Michigan's Uniform Trade Secrets Act, conversion, and a violation of the Computer Fraud and Abuse Act, respectively. Each of those counts has a common factual predicate: Stone's access to two accounts, described in the Complaint as the Gmail Account and the Hotmail Account, which purportedly contained the Plaintiff's customer information and trade secrets. Stone disputes those allegations, but even if the Court credits the claims, the time for the Plaintiff to bring suit on those claims has long since passed.

The respective statute of limitations bars Counts I, IV, V, and VI. A party interposing the statute of limitations as an affirmative defense is obligated to assert that defense in its pleading, which the Stone did. (Answer p. 36). As with all affirmative defenses, Stone bears the initial burden of proving its applicability. *Campbell v. Grand Trunk W. R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). If that is met, the burden then shifts to the Plaintiff to demonstrate that an exception applies. Here, Counts I, IV, V, and VI are all barred by the statute of limitations.

The Defend Trade Secrets Act ("DTSA"), the Michigan Uniform Trade Secrets Act ("UTSA"), and Michigan's conversion statute all have three-year statutes of limitation. The DTSA provides that "[a] civil action . . . may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C.A. § 1836. The

6

UTSA provides that "[a]n action for misappropriation must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Mich. Comp. Laws § 445.1907. Michigan's general limitation statute that applies to injury to property states that the "period of limitations is 3 years after the time of . . . injury to a person or property." Mich. Comp. Laws § 600.5805; *Tillman v. Great Lakes Truck Ctr., Inc.*, 742 N.W.2d 622, 623 (Mich. 2007). The Computer Fraud and Abuse Act has a two-year statute of limitations that "commences [on] 'the date of the act complained of or the date of the discovery of the damage.'" *Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1149 (W.D. Mich. 2019), *aff'd*, 831 F. App'x 161 (6th Cir. 2020) (quoting 18 U.S.C. § 1030(g)).

Each of the trade secret statutes further states that for purposes of the limitations period "a continuing misappropriation constitutes a single claim" of misappropriation. 18 U.S.C.A. § 1836; Mich. Comp. Laws § 445.1907. The Sixth Circuit explained the import of that provision in analyzing identical language contained in the Kentucky Uniform Trade Secrets Act. The court explained that the language was intended to reject "'a continuing wrong approach to the statute of limitations....'" *Amalgamated Indus. Ltd v. Tressa, Inc.*, 69 F. App'x 255, 261 (6th Cir. 2003) (quoting Unif. Trade Secrets Act, com. to § 6, p. 462). "The unanimous conclusion of the courts considering the issue has been that a *claim* for misappropriation arises only once for statute of limitation purposes—at the time of the initial misappropriation...." *Id.* (collecting cases). Thus, Stone's subsequent use of the allegedly misappropriated trade secrets is immaterial to the Court's statute of limitations analysis.

Here, it is undisputed that if any misappropriation, conversion, or unauthorized access occurred, it occurred in the fall of 2015, when Stone reasserted control over the Hotmail

Account.[1] (Shindorf Dep. 125:17- 126:7 (agreeing that he lost access to the Hotmail Account around November 6, 2015)). Thus, without tolling, the statute of limitations expired in 2017 for the Count VI and 2018 for Counts I, IV, and V. Even considering tolling, however, the statute of limitations has long expired for each of the foregoing counts.

The Plaintiff alleges that it intended the Hotmail Account to act as a database of customer information. (Shindorf Dep. 17:9-21). If that was the intended purpose, one would have expected the Plaintiff to have discovered that it no longer had access to the Hotmail Account quickly. On this record, the Plaintiff knew that it lost control of the Hotmail Account no later than February 2016, when the Plaintiff's principal submitted a password reset for the Hotmail Account. (SOMF ¶ 85). That email's subject line was "[y]our account recovery request for clslcs@hotmail.com." (*Id.*). It noted that someone had attempted to reset the password, but that attempt had failed. (*Id.*). After receiving that notice, the Plaintiff did nothing to regain control of or otherwise protect what it now alleges was a repository of valuable information. Had the Plaintiff exercised reasonable diligence, the latest date on which it knew or should have known that it lost access to the Hotmail Account was February 20, 2016. Thus, even with tolling, the statute of limitations expired on February 20, 2018, for Count VI and February 20, 2019, for Counts I, VI, and V. The Plaintiff did not file its complaint until September 2, 2022. (Compl.). The Court should, therefore, enter summary judgment on Stone's statute of limitations affirmative defense as it relates to those Counts.

c. **The Plaintiff's Failure to Register its Works Bars Court II**

---

[1] The Gmail Account is not discussed in this section because the Plaintiff admitted in its deposition that it never lost access to the Gmail Account, has no reason to believe Stone ever accessed that account, and is unaware of any damage caused by Stone's attempt to access the Gmail Account. (*See* SOMF § VI(b)). The Court should enter summary judgment with respect to all claims related to the Gmail Account.

Count II alleges a violation of the Copyright Act, 17 USC § 101. To prevail on a Copyright Act claim, a plaintiff must show "'(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original.'" *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); citing *Kohus v. Mariol,* 328 F.3d 848, 853 (6th Cir. 2003)). "An author gains 'exclusive rights' in her work immediately upon the work's creation, including rights of reproduction, distribution, and display." *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 300–01 (2019) (citing 17 USC § 106; *Eldred v. Ashcroft*, 537 U.S. 186, 195 (2003)). But to bring a copyright claim, the owner must, with exceptions not relevant here, "comply with § 411(a)'s requirement that 'registration of the copyright claim has been made.'" *Id.* (citing 17 USC § 411(a)). That registration requirement is "'akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights.'" *Joe Hand Promotions, Inc. v. Griffith*, 49 F.4th 1018, 1022 (6th Cir. 2022) (quoting *Fourth Est.*, 586 U.S. at 195). The Plaintiff admitted in its deposition and interrogatories that it has not registered any of the works for which it seeks damages. (SOMF ¶ 100). Thus, Count II must be dismissed.

### d.  <u>The Plaintiff's Failure to Prove a Breach of the Restrictive Covenant Entitles Plaintiff To Summary Judgment on Count III</u>

The Plaintiff has failed to prove its breach of contract claim. "[A] party claiming a breach [of contract] must establish (1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach." *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 601 (Mich. 2014) (citing *Dunn v Bennett*, 846 NW2d 75 (Mich. 2013)). Absent ambiguity, contractual interpretation "can be resolved as a matter of law, leaving no question for a fact finder." *Dietrich v. Bell, Inc.*, 554 F.

App'x 418, 421 (6th Cir. 2014) (citing *City of Wyandotte v. CONRAIL*, 262 F.3d 581, 585 (6th Cir. 2001)).

Michigan law governs the Non-Compete Agreement. (SOMF ¶ 41). Thus, "'[a] contract, combination, or conspiracy between 2 or more persons in restraint of, or to monopolize, trade or commerce in a relevant market is unlawful.'" *Innovation Ventures, Ltd. Liab. Co. v. Liquid Mfg., Ltd. Liab. Co.*, 885 N.W.2d 861, 873 (Mich. 2016) (quoting Mich. Comp. Laws § 445.772). That said, a court will enforce a non-compete agreement when that agreement is reasonable. Whether a non-compete agreement is reasonable "'is a question of law when the relevant facts are undisputed.'" *Innovation Ventures, Ltd. Liab. Co. v. Liquid Mfg., Ltd. Liab. Co.*, 885 N.W.2d 861, 870-71 (Mich. 2016) (quoting *Coates v Bastian Brothers, Inc*, 741 NW2d 539 (2007); citing *Follmer, Rudzewicz & Co, PC v Kosco*, 362  NW2d 676 (1984)). While it is true that "the reasonableness of a covenant not to compete incident to the sale of a business has been generally scrutinized less rigorously than the reasonableness of such a covenant when incident to an employment contract," the provision still must be scrutinized. *Woodward v. Cadillac Overall Supply Co.*, 240 N.W.2d 710, 715 (Mich. 1976).

The Plaintiff alleges that Stone violated the Non-Compete Agreement. That agreement's restriction states:

> **Non-Competition**. Seller agrees that for a period of seven (7) years after the Closing Date neither will directly or indirectly engage or invest in, own, manage, operate, finance, control, or participate in the ownership, management, operation, financing, or control of, be employed by, associated with, or in any manner connected with, lend credit to, or render services or advice to, any business whose products or activities compete in whole or in part with the business of AIS within 40 miles of wherever AIS conducts business, has conducted business in the last 12 months, and of AIS' s operations, or attempt to interfere with the business of AIS, either directly or indirectly, in any manner, including, but not limited to: (a) interacting with the AIS's customers in an attempt to take, redirect, re-price, interrupt or discontinue any facet of the business relationship; (b) interacting with AIS 's employees or representatives in an attempt to induce them to leave employment with AIS; or (c) interacting with any other person or entity so as to divulge information about AIS's business.

(SOMF ¶ 40).

As relevant to this Motion, the Non-Compete Agreement contained two components. The first prohibited competition and the second prohibited interference with the Plaintiff's business. The competition restriction: 1) applied only to businesses that competes with the Plaintiff's business; 2) and extended only forty miles from the Plaintiff's place of business. The interference restriction prohibited Stone from: 1) inducing the Plaintiff's employees to leave; or 2) divulging the Plaintiff's business information.

The Plaintiff's Complaint alleges Stone violated that agreement by 1) owning multiple other businesses which were competitive with it during the restrictive period and 2) diverting the Plaintiff's customers to his own business during the restrictive period. (Compl. ¶¶ 79-80). With respect to the former, the Plaintiff's answers to interrogatories confirmed that the allegations referred to US Tool Depot, LLC and xpabrasives.com. (Rogs ¶ 21). With respect to the latter, the Plaintiff failed to identify any customer diverted during the restrictive period. (Rogs ¶ 22). With discovery closed, the Plaintiff has utterly failed to prove its case.

As an initial matter, the transaction closed on October 13, 2014. (APA). Thus, the restrictive period expired on October 13, 2021. Any competitive activity that occurred after that date did not breach the Non-Compete Agreement. Additionally, the restriction only extends forty miles from "wherever AIS conducts business." (APA). Thus, any competitive activity that occurred outside that radius did not breach the Non-Compete Agreement. The Plaintiff admitted that the location from which it conducts business is Grand Rapids, Michigan. (SOMF ¶ 96).

The Plaintiff has not proved that Stone's ownership of US Tool Depot, LLC competed with its products. Stone formed US Tool Depot, LLC in 2018. (SOMF ¶ 59). Because that business was formed in New Jersey, it was not located within forty miles of where the Plaintiff conducts

business. (SOMF ¶ 97). Additionally, Stone did not solicit customers in connection with that business; instead, he simply created a website and ran Google AdWords campaigns. (SOMF ¶ 60). Thus, the Plaintiff cannot show that Stone's operation of US Tool violated either the competition restriction or interference restriction. For that reason alone, the Court should enter summary judgment determining that Stone's operation of US Tool Depot did not violate the Non-Compete Agreement. Even if the Court were to ignore the clear terms of the Non-Compete Agreement, the Plaintiff still has not demonstrated that the operation of US Tool violated the non-compete agreement.

One of Stone's interrogatories required the Plaintiff to "[i]dentify each product sold by Stone through US Tool Depot [it] allege[s] competed with Allied's business." (SOMF ¶ 95). Instead of answering that interrogatory as requested, the Plaintiff simply stated that "records publicly accessible from one or more internet archival sources (e.g. the Internet Archive's Wayback Machine, accessible at web.archive.org) reveal that US Tool Depot advertised for sale several products materially similar, identical to, or competitive with products sold or offered by Plaintiff during the term of the Non-Competition Agreement. (SOMF ¶ 95). That answer does not identify competitive items sold during the term of the Non-Compete Agreement. Furthermore, on the eve of the discovery end date, the Plaintiff produced what appears to be complete copies of US Tool Depot's website. But the copyright date on those images is 2022. (SOMF ¶ 98). Thus, it is pure speculation to conclude that US Tool sold competing goods during the term of the Non-Compete Agreement. In any event, it is undisputed that unlike LVA, US Tool's business focused on woodworking tools. (SOMF ¶ 61). The Plaintiff has acknowledged that LVA's metal working business was a "niche" business and that the abrasive business has "subsegments" that are completely "unrelated." (SOMF ¶¶ 32, 99). Thus, it is pure speculation to conclude that selling

12

woodworking tools competes with selling metalworking tools. The Court should, therefore, enter summary judgment regarding Stone's operation of US Tool.

The Court should enter summary judgment regarding Stone's operation of xpabrasives.com. As an initial matter, Stone concedes that xpabrasives.com competes with the Plaintiff in the sale of metalworking tools. (SOMF ¶ 63). Stone further concedes that he *formed* the business in 2021 before the expiration of the Non-Compete Agreement. (SOMF ¶ 63). Finally, Stone concedes that he ordered the products that would compete with the Plaintiff during the term of the Non-Compete Agreement. (SOMF 64). But Stone *did not* populate his website with products or otherwise offer competing goods for sale before the expiration of the Non-Compete Agreement term. Even considering all of those concessions, Stone is entitled to summary judgment regarding his operation of xpabrasives.com.

As set forth above, in the Non-Compete Agreement Stone promised not to "directly or indirectly engage or invest in . . . any business whose products or activities *compete* in whole or in part with the business of AIS within 40 miles of wherever AIS conducts business." (SOMF ¶ 40 (emphasis added)). "Compete" is a present-tense verb. *Tenaris Bay City, Inc. v. United States*, 698 F. Supp. 3d 1287, 1297 (Ct. Int'l Trade 2024). Thus, for Stone to violate that provision, the competition would have had to have been occurring during the restrictive period. If the Plaintiff wanted to restrict Stone from planning on competing, there are several ways it could have gone about it. It could have modified the restriction to read "… any business whose products or activities compete [or will in the future compete] in whole or in part with the business of AIS within 40 miles of wherever AIS conducts business." That would have clearly restricted Stone from engaging in the planning of a competing business before the end of the restrictive period.

13

The Plaintiff did not do so. It cannot now rewrite the provision to expand its scope. Thus, the Court should enter summary judgment with respect to Stone's operation of xpabrasives.com.

e. **The Court Should Enter Summary Judgment on Stone's Affirmative Defense that the Liquidated Damages Provision is an Unenforceable Penalty**

If the Court does not enter summary judgment concerning Stone's operation of US Tool and xpabrasives.com, it should still enter summary judgment on Stone's affirmative defense that the Non-Compete Agreement's liquidated damages provision is an unenforceable penalty. Whether a liquidated damages provision is "valid and enforceable or invalid as a penalty is a question of law." *UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 421 (Mich. App. 1998) (citing *Moore v. St. Clair Co.*, 328 N.W.2d 47 (1982)). "'Courts will not permit parties to stipulate unreasonable sums as damages, and where such an attempt is made have held them penalties and therefore void and unenforceable.'" *Moore v. St. Clair Cnty.*, 328 N.W.2d 47, 50 (Mich. App. 1982) (citing *Curran v. Williams*, 89 N.W.2d 602 (Mich. 1958)). The touchstone of the Court's inquiry is whether the parties attempted to "to render certain and definite that which appears to be uncertain and not easily proven." *Curran v. Williams*, 89 N.W.2d 602, 604 (Mich. 1958).

The liquidated damages provision provides that in the event of a breach, Stone will be liable for "the greater of actual damages or liquidated damages in the amount of $250,000.00." (SOMF ¶ 42). There are two primary reasons why that provision is unenforceable. First, if Stone merely sold a $20 flap disc during the restrictive period, the Plaintiff would be entitled to $250,000. That wildly disproportionate entitlement smacks of a penalty. *See Papo v. Aglo Restaurants of San Jose, Inc.*, 386 N.W.2d 177, 181 (Mich. App. 1986). Second, calculating damages for a breach of the Non-Compete Agreement is a simple matter: if Stone solicited customers, the measure of damage would be the Plaintiff's lost profits or Stone's earned profits. If Stone operated a

14

competing business, the measure of damage would be the profits he generated. In either instance,

the damages are easily calculated. That is likely why the provision entitles the Plaintiff to the

*greater* of its actual damages or $250,000. Third, the business is not one with important

customers. Instead, to generate the approximately $3.5 million dollars in revenue at the time of

the sale, it made thousands of low-dollar sales. (SOMF ¶ 30). Based on the foregoing, the

Plaintiff's damages were easy to calculate at the time of contracting and wildly disproportionate

to the actual damage the Plaintiff has shown in this action (which is nothing).

## **CONCLUSION**

For all the foregoing reasons, the Defendant respectfully requests that this Court enter

summary judgment on all counts.

**STARK REAGAN, P.C.**

/s/ Christopher E. LeVasseur
Christopher E. LeVasseur (P35981)
Attorney for Defendant Christopher Stone
1111 W. Long Lake Rd., Ste. 202
Troy, Michigan 48098
(248) 641-9955
clevasseur@starkreagan.com

Dated: February 14, 2025

## **CERTIFICATE OF SERVICE**

I certify that on February 14, 2025, I electronically filed the foregoing
document  with the Clerk of the Court using the CM/ECF system which will send
notification of the filing to all counsel of record.

/s/ Megan Kienle
Megan Kienle

15

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of the W.D. Mich. LCivR 7.3(b)(i) because this brief contains 4,626 words, excluding parts of the brief exempted by W.D. Mich. LCivR 7.2(b)(i).

2.      This brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 Version 2408.

**STARK REAGAN, P.C.**

/s/ Christopher E. LeVasseur
Christopher E. LeVasseur (P35981)
Attorney for Defendant Christopher Stone
1111 W. Long Lake Rd., Ste. 202
Troy, Michigan 48098
Dated: February 14, 2025        (248) 641-9955
7942-1        clevasseur@starkreagan.com

## CERTIFICATE OF SERVICE

I certify that on February 14, 2025, I electronically filed the foregoing document  with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record.

/s/ Megan Kienle
Megan Kienle

16